782·15    783-15

# In The Court of Criminal Appeals

ORIGINAL

Vincent Ray Settles
Petitioner, Pro-se

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 16 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

SEP 16 2015

Abel Acosta, Clerk

VS.

The State Of Texas
Respondent

On Petition For Discretionary Review from the fifth district Court of Appeals in Appeal No. 05-14-00382-ce, 05-14-00383-ce F14-00085-J & F14-00086-J, affirming the judgement of Third District Court of Dallas County, Texas in cause number F14-00085-J & F14-00086-J the Honorable

Pro-Se Petition For Discretionary Review

Vincent Ray Settles
Petitioner, pro-se
TDCJ # 1939000
Coffield Unit
2661 FM 2054
Tennessee Colony, Texas
75884

III

# In The Court of Criminal Appeals

## Vincent Ray Settles
### Petitioner, pro-se

## Vs.

## The State of Texas
### Respondent

To the Honorable Justices of The Court of Criminal Appeals. Now comes, Vincent Ray Settles, pro-se, hereinafter "Petitioner," pursuant to Rule 66.3 of Texas Rules of Appellate Procedure, and respectfully petitions this Honorable Court to exercise its discretion to review the opinion and decision rendered by the No. Three District Court of Appeals in appeal number 05-14-00382-CR & 05-14-00383-CR affirming the judgement of the Fifth District Court of Dallas County, Texas, in cause number F14-00085-J & F14-00086-J. Here in support Petitioner will respectfully show.

# Table Of Contents

Table of Contents ─────────── VI

Index of Authorities .................. V

Statement Regarding Oral Arguments─────── 1

Statement of The Case ─────── 1

statement of Procedural History ─────── 2

## Grounds For Review

1) whether The Court of Appeal was correct in concluding that the trial court did not error by denying the requested jury instruction for a lesser included offense of assault?

2) whether The Court of Appeal was correct in concluding that the trial court did not error by overruling Petitioners' objection to state Exhibits 59 and 59(a)

Arguments ─────── 3,4

Prayer ─────── 5

Certificate of Mailing ─────── 5

Certificate of Service ─────── 6

## Appendix

Fifth Court of Appeals Opinion

# Index Of Authorities

## Cases

Ex parte Eldridge 572 S.W. 2d 716
Hamilton v. State 678 S.W. 2d 90
Hampton v. State 109 S.W. 3d 437
Tew v. State 551 S.W. 2d 716

## Federal

## Statues Rules and Codes

Tex. Penal Code Ann. Sec. 2802 (Vernon 1974)
TEX Rules of Appellate Procedure 66.3 (a) (c)
Tex Rules of Appellate Procedure 66.3(a)(c)

## Statement Regarding Oral Arguments

Petitioner believes that oral argument is only necessary if the court deems them to be necessary. Should the Court desire oral argument, Petitioner requests appointment of counsel, and hereby reserves oral argument for counsel.

## Statement of Case

On March 19, 2014 Petitioner was convicted in the Third District Court of Dallas County, Texas of offenses of Agg. Assault/DW/3rd F14-00086J and Unlawfully Possess of Firearm by Felon F14-00085-J. The Honorable Gracie Lewis, Judge presiding. A judge found two enhancement paragraphs to be true on AA/DW/3rd and one enhancement on UPF Felon. And assessed Petitioners punishment at 40 years on AA/DW/3rd and 10 years on UPF Felon and confinement in the Texas Department of Criminal Justice-Institutional Division. Petitioner did not file a motion requesting a new trial. On March 19, 2014. Petitioner timely gave oral and written notice of appeal

# Statement Of Procedural History

Appeal was to the Fifth Court of Appeal, which affirmed the trial courts judgement in an published opinion on June 3, 2015 settles Vs. State No. 05-14-00382CR 05-14-00383CR ( Tex App. Dallas [Third Dist] F14-00085J, F14-00086-J June 3, 2015 ) Proceeding pro-se, Petitioner was granted leave to timely file a motion requesting rehearing. Petitioner was then granted an extension of time, or until and through Sept. 1, 2015 to file the instant pro-se petition requesting a discretionary review.

# Grounds For Review

1. whether the Court of Appeal was correct in concluding that the trial court did not error by denying the requested jury instruction for a lesser included offense of assault?

2) whether the court of appeals was correct including that the trial court did not error by overruling petitioners objection to state Exhibits 59 and 59(a)

2

# Argument

## Ground one

— 1) Whether the court of appeal was correct in concluding that the trial court did not error by denying the requested jury instruction for a lesser included offense of assault?

* The Court of Appeal has rendered an opinion in conflict with the rationale of this Court in Hampton v. State 109 S.W. 3d 437, 441 (Tex Crim. App. 2003)

Pg. 6 Padilla testified that she had previously seen this person smoking and drinking on the stairs of the apartment complex (RR5:101, 104) Pg. 5 It was a black male though she did not recall what he was wearing (RR5:96, 106) Pg. 5 Padilla claimed that she first saw the gun in his hand when the intruder fell in her apartment (RR5:100) she thought it might be black, but admitted she only glance at it (RR5:106) she was not able to identify a gun used in this case (RR5:105-106) He said something to her, but Padilla did not understand as it was in ENGLISH and she speaks only spanish (RR5:100) she was trying to make a "sign" telling him to go back into the room RR5:101) The person was lying down and making grunt sounds Padilla jumped over his legs to get around him and out the door of her apartment (RR5:97) Padilla went down the first set of stairs when the intruder caught up with her (RR5: 98, 99) Padilla admitted that she originally told office that these events had occurred inside her apartment (RR5:107) Pg 13 No gun was found on Appellant at the time of his arrest nor did the arresting officer see Appellant with a gun (RR5:169, 170)

3

# Ground II

Whether The Court of Appeal was correct In concluding that the trial Court did not error by overruling Petitioners objection to state Exhibits 59 and 59a?

* The Court of Appeal has rendered an opinion in conflict with the rationale of this court Hamilton v. State 678 S.W. 2d 90 Tex. Penal code Ann. 46.05 (vernon 1974), Ex parte Eldridge 572 S.W. 2d 716, and Tew v. State 551 S.W. 2d 375 Tex. Penal Code Ann. Sec. 28.02 (Vernon 1974)

Pg.3 when the police subsequently searched the apartment, they found two spent cartridge cases and a defect in a wall consistent with a gun being fired at the wall (RR5: 181-191) Pg 3 It could not be determined, however, when these shots were fired or when the damage to the wall was done, (RR5:196) Pg. 4 The Lynns heard a window crash and Someone came into their apartment as the family was running for a back room; neither Daniel nor Clifton saw the person the person who entered the apartment (RR 5: 120, 127, 141) After the police left the Lynn apartment, Clifton found a gun, a 40 caliber Smith and wesson, underneath a bunch of clothes (RR5: 138, 139; State's Exhibit 69) Clifton called the police who came and retrieved the gun (RR5: 140, 144-146) Pg. 7 As they came around the corner of one of the building Officer Bailey saw a black male in white T-shirt and blue jeans kicking in a window (RR5: 153) Pg 8 Officer Bailey never found a handgun in Appellants possession (RR5: 168, 170)

4

## Prayer For Relief

Wherefore, Premises considered, appellant humbly prays that The honorable Texas Court of Criminal Appeals would grant a Petition for Discretionary Review, and remand to the Fifth with instruction to conduct a less included charge and acquittes and to further consider the merits of appellants pro-se arguments.

Respectfully Submitted

Vincent Ray Settles

Petitioner, pro-se

#1939000
Coffield Unit
2661 FM 2054
Tennessee Colony, Texas
75884

## Certificate of Mailing

I, Vincent Ray Settles 1939000, swear under penalty of perjury that on this 24 day of Aug. 2015, I placed the foregoing attached Pro-se Petition For Discretionary Review, in a postage prepaid envelope addressed to

Clerk: Abel Acosta
Court of Criminal Appeal
Supreme Court Building
P.O. Box 12308
Austin, Texas
78711

and then on that same date deposited the same in the prisons mail box for outgoing inmate mail.

Vincent Ray Settles

# Certificate of Service

I, Vincent Ray Settles #1939000, swear under the penality of prejury that on this 24 day of Aug. 2015. I served a true and correct paper copy of the foregoing Pro-Se Petition for Discretionary Review by United States Mail postage prepaid placing same in an envelope addressed to:

Abel Acosta
Court of Criminal Appeal
Supreme Court Building
P.O. Box 12308
Austin, Texas
78711
and then depositing same in the prison mailbox.

Vincent Ray Settles

6

Affirmed as Modified; Opinion Filed June 3, 2015.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-14-00382-CR

No. 05-14-00383-CR

**VINCENT RAY SETTLES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause Nos. F14-00085-J and F14–00086–J**

# MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Myers

Appellant Vincent Ray Settles was convicted by a jury of unlawful possession of a firearm by a felon[1] and aggravated assault with a deadly weapon.[2] The trial court assessed a punishment of ten years' imprisonment in the unlawful possession of a firearm case. In the aggravated assault case, the trial court accepted appellant's plea of true to both of the indictment's enhancement paragraphs, found the two enhancement paragraphs true, and assessed punishment at forty years' imprisonment. In two issues, appellant contends the trial court erred by denying his requested jury instruction for a lesser-included offense in the aggravated assault

---

[1] Cause number 05-14-00382-CR (F14-00085-J).

[2] Cause number 05-14-00383-CR (F14-00086-J).

case, and that the trial court should not have overruled appellant's objection to two State's exhibits in the unlawful possession of a firearm by a felon case. As modified, we affirm the trial court's judgments.

## BACKGROUND AND PROCEDURAL HISTORY

Lorenza Padilla testified[3] that she was living in a second-floor apartment at the Venue at Greenville apartments on July 8, 2013, in Dallas, Texas. She was in her apartment on that day when she heard what sounded like an iron rod being thrown to the ground. She went to the window and looked out over the parking lot, but saw nothing. She soon heard what sounded like a thump in the area of her kitchen door and went to the window near the door to investigate. She was opening the blinds when she heard a thud on her door, followed by another thud, at which point a man knocked down the door and landed on the floor of Padilla's apartment. Padilla recalled that the man, a black male, "seemed to be very drunk." She saw a gun in his hand. Padilla jumped over the man's legs while he was still lying on the floor and fled out the door of the apartment. Padilla made it down the first set of stairs before the man caught up to her, put his arm around her neck, and held a gun to her head. Padilla thought the man was going to kill her. She recalled that he was saying something to her in English, but Padilla, who spoke only Spanish, did not understand him. She asked him in Spanish if he wanted money, pointing toward the door to her apartment and saying "dinero." The man then let Padilla go and she ran to another apartment where a woman she knew let her in and called the police.

The police took photographs of Padilla's injuries. At trial she identified photographs of her injuries that showed redness on her neck and some scratches.

Padilla testified that she first saw the gun in the man's hand when he fell into her apartment. She testified that the gun seemed to be black but she just glanced at it. When asked

---

[3] Padilla did not speak English. She testified at trial through a Spanish-speaking interpreter.

if she saw the gun or could feel it when it was placed against her neck, Padilla testified: "[W]hen it was here, I could feel it, I—and then I could see it. I—I just was very afraid." She admitted on cross-examination that she originally told officers that these events occurred inside her apartment rather than on the stairwell. She also testified that she had previously seen the man who broke into her apartment smoking and drinking on the stairs of the apartment complex, and thought he lived at the complex.

Other evidence showed that Dallas police received four 911 calls reporting an armed man at the Venue at Greenville apartments on July 8, 2013. One of those 911 calls was made by Alice Cabellero, who was working at the apartment complex's leasing office on the day in question. She testified that she made the 911 call after she saw a man running towards the leasing office with a gun. She described him as a black male wearing a white t-shirt and blue jeans. She told the 911 operator that the man was running towards building 15. She followed him through the apartment complex to building 17, arriving there at around the same time as the Dallas Police officers responding to the 911 calls.

The first Dallas officers to arrive at the scene were Officer Emily Bailey and her senior training officer. Officer Bailey testified that at around 5:00 to 6:00 p.m. on July 8, 2013, she was on patrol with a senior training officer—she was on the fourth or fifth week of her officer training—when they received a high-priority call about a person with a weapon at an apartment complex at 5759 Pineland who was "actively shooting." The officers pulled up to the street before the gate to the complex, where a woman flagged them down and told them "he's in there, he's in there." The officers entered the complex and drove around looking for a man matching the description they had been given—an armed black male with a white t-shirt and blue jeans. When Officer Bailey, who was driving, drove around the corner of one building, she saw a black male in a white t-shirt and blue jeans kicking in a window. Officer Bailey identified this man in

–3–

court as appellant. After the officers got out of the squad car, they approached appellant on foot with their weapons drawn and ordered him to show them his hands, but appellant did not respond. Then, suddenly, appellant fell forward to the ground, and was resting on his hands. The officers continued ordering appellant to show them his hands; he did not comply. Appellant got up and tried to run away, but Officer Bailey pursued appellant "and took him to the ground." With the assistance of other officers, she handcuffed appellant. After the officers handcuffed appellant, they carried him and placed him in one of the patrol cars.

Officer Bailey testified that appellant "was not acting like a sober person." She added, "I think he was under the influence of something." Officer Bailey also testified that appellant continued struggling after he was handcuffed and placed in the squad car—trying to kick out the windows. The officers removed him from the vehicle and held him down.

After the officers got appellant under control, Officer Bailey went around the complex and started interviewing potential witnesses. She tried to interview Padilla but "it didn't work" because Padilla spoke only Spanish. A Spanish-speaking officer was brought in to talk to her.

Officers also interviewed Daniel Lynn, who lived in a ground-floor apartment in building 17 at the Venue at Greenville apartments. Lynn was at home that day with his father, his brother Clifton, his brother's girlfriend, and his brother's friend. He went outside to smoke a cigarette and saw appellant, whom he recognized as a person that lived "like cater-corner from us" at the complex, "acting erratic and paranoid." Lynn could see appellant had a gun. Appellant went up the stairs to the floor above Lynn's apartment. Lynn went back into his apartment, locked the door, and told his brother to call 911.[4] He told everyone to get back into their rooms and told his father to get down on the floor. They soon heard two gunshots and loud noises that sounded like someone running coming from the floor above Lynn's apartment. Then they "heard a boom

---

[4] Clifton made one of the recorded 911 calls that were introduced into evidence.

against the door," and a window inside their apartment broke only seconds later. Someone had entered their apartment.[5] Lynn and his companions barricaded themselves in two back bedrooms; they could hear someone outside "rustling around" in the apartment. They stayed hidden until they knew the police had entered the apartment. Lynn testified that the apartment "was trashed." The police investigated inside Lynn's apartment and dusted for fingerprints. After they left, as he was cleaning up the apartment, Clifton found a .40 caliber Smith and Wesson handgun hidden underneath some clothing. He called the police and they took custody of the gun.

Dallas Police officers also searched the second-floor apartment at the Venue at Greenville where Brandon Dunn lived with his grandparents and appellant, his uncle. Dunn testified that when he arrived home from work on the afternoon of July 8, 2013, the police were there waiting. He signed a consent form that allowed officers to search the apartment. Inside the apartment, Dallas police officer Kevin Moss found two fired cartridge casings and a magazine from a pistol that held live rounds. He also saw a defect in the wall that was consistent with a fired bullet. Dunn did not recall seeing any ammunition or shell casings about the apartment when he left for work that morning.

## DISCUSSION

### 1. Lesser-Included Offense

In his first issue, appellant contends the trial court erred by denying his request for a jury instruction on a lesser-included offense of simple assault by threat in the aggravated assault case, cause number 05–14–00383–CR.

Appellant was charged with aggravated assault by threat with a deadly weapon in 05–14–00383–CR. The indictment alleged that on or about July 8, 2013, appellant "did unlawfully then

---

[5] Lynn testified that neither he nor his brother actually saw the person who entered their apartment.

and there intentionally and knowingly threaten LORENZA PADILLA with imminent bodily injury, and said defendant did use or exhibit a deadly weapon, to-wit: a FIREARM, during the commission of the assault." A person commits simple assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1). To obtain a conviction for simple assault by threat, the State must establish that the accused intentionally or knowingly threatened another with imminent bodily injury. *Id.* § 22.01(a)(2). Section 22.02 provides that a person commits aggravated assault if he commits assault under section 22.01 and uses or exhibits a deadly weapon during the commission of the assault. (See id. § 22.02(a)(2); *see also Goldsmith v. State*, No. 14–12–00614–CR, 2014 WL 261007, at *6 (Tex. App.—Houston [14th Dist.] Jan. 23, 2014, no pet.) (mem. op., not designated for publication) (elements of aggravated assault by threat are that (1) a person, (2) intentionally or knowingly, (3) threatened another with imminent bodily injury, (4) while using or exhibiting a deadly weapon).

In requesting the lesser-included instruction on assault at trial, appellant's trial counsel directed the trial court to Padilla's testimony. Counsel stated, "She testified that the assailant grabbed her around the neck and scratched her," and that "[t]here was some pictures of the scratches." He then argued:

> Her testimony was that she saw a weapon when the assailant fell down at the threshold of the apartment and she felt what was consistent with a weapon, but I don't think there was any testimony—I think it raises the possibility—certainly gives us the opportunity to ask for a lesser included offense should the jury feel like the use of the firearm at that specific point in time was insufficient.

The State responded that the only testimony was Padilla's testimony that the assailant put his arm around her neck and held a gun to her head at the same time, and that "I don't believe there's any evidence of a lesser assault." The trial court told the parties that "I'm going to allow for the lesser assault," but after taking a recess it returned with a charge that omitted the lesser-included offense. The charge allowed the jury two options: conviction for aggravated assault

with a deadly weapon or acquittal. Appellant's trial counsel objected as follows:

> Concerning F14–00086, we would reurge our request to include within that charge a lesser-included offense of the Class A misdemeanor assault. We would suggest that the—that that evidence has been raised by the—that that charge has been raised by the evidence.
>
> Specifically, the victim stated—Miss Padilla stated that she was grabbed about the neck. There's some testimony concerning what would be considered bodily injury in that regard in the event that the jury has a reasonable doubt concerning whether or not a weapon was used.
>
> Certainly, her testimony was that a weapon was used—was seen by her. I believe her testimony was that she saw the weapon when the assailant fell at the threshold. At that point, the assailant then approached her from behind. She was questioned concerning that.
>
> Her testimony was that she was very scared, and I think there's at least the reasonable possibility that the—that the jury could have reasonable doubt concerning whether or not a weapon was used at that specific point in time. Her testimony was that she didn't hear any threats because the assailant was speaking in English, and she was talking to him in Spanish; she doesn't understand any English.
>
> I understand the Court's position that if a gun is placed against someone's head, that that, in and of itself would be a threat, but, also, in the event that the jury has a reasonable doubt concerning that, then the lesser-included misdemeanor would remain. And that's why we're asking that be placed in the Court's Charge.

The State responded that the only testimony in front of the court was Padilla's testimony that the assailant grabbed her from behind and placed a gun to her head. The trial court held to its previous determination not to include simple assault in the charge.

Our first duty in analyzing a jury charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). If we find error, we analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id.* If error occurred and appellant objected at trial, we determine whether the error was "calculated to injure" the appellant's rights, which means there must be "some harm" to the accused resulting from the error. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App.

–7–

1984)).

To determine whether the lesser-included offense instruction requested by appellant should have been given, we follow a two-step analysis. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981) (plurality op. on reh'g). The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). We compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser-included offense. *Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010); *Ex parte Watson*, 306 S.W.3d 259, 263 (Tex. Crim. App. 2009); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09. This step is a question of law. *Hall*, 225 S.W.3d at 535.

The second step is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense, while convicting him of only the lesser-included offense. *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006); *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). The evidence must establish the lesser-included offense as "a valid rational alternative to the charged offense." *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008); *see also Rice v. State*, 333 S.W.3d 140, 146 (Tex. Crim. App. 2011). We review all of the evidence presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478–79 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 673. Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). In determining whether the evidence raises the requested lesser-included offense, we do not consider the credibility of the evidence or whether it conflicts with other evidence. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).

Appellant argues that an instruction on simple assault by threat should have been included in the charge. Neither side disputes that, as a general rule, simple assault by threat would be a lesser-included offense of aggravated assault by threat, the charged offense. The crucial distinction between simple assault by threat and aggravated assault by threat, as charged, is that an aggravated assault charge requires the State to establish that appellant used or exhibited a deadly weapon during the commission of the assault, whereas a charge of simple assault by threat does not. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2); *Irving v. State*, 176 S.W.3d 842, 845–46 (Tex. Crim. App. 2005); *Bridges v. State*, 389 S.W.3d 508, 512 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Perry v. State*, No. 06–13–00051–CR, 2014 WL 3973929, at *9 (Tex. App.—Texarkana Aug. 15, 2014, pet. ref'd) (mem op., not designated for publication); *Hosea v. State*, No. 14–08–00337–CR, 2009 WL 6338617, at *3 (Tex. App.—Houston [14th Dist.] Oct. 6, 2009, pet. ref'd) (mem. op., not designated for publication). Thus, the elements of simple assault by threat are contained within the proof necessary to establish aggravated assault by threat. *See Irving*, 176 S.W.3d at 845–46.

But at trial appellant's counsel argued for an instruction on simple assault based on bodily injury to Padilla. While assault by threat is a lesser-included offense of aggravated assault by threat, assault by causing bodily injury is not a lesser-included offense of aggravated assault by threat. *See Hall*, 225 S.W.3d at 531 (noting that "[a]ssault by committing bodily injury is a lesser-included offense of aggravated assault by inflicting serious bodily injury, but not of aggravated assault by threat with a deadly weapon"); *Irving*, 176 S.W.3d at 845–46 (providing that simple assault is a lesser-included offense of aggravated assault when the conduct constituting the simple assault is the same conduct alleged in the aggravated assault charge); *Jones v. State*, No. 01–13–00431–CR, 2014 WL 5500485, at *3 (Tex. App.—Houston [1st Dist.] Oct. 30, 2014, pet ref'd) (mem. op., not designated for publication) ("[M]isdemeanor assault by

–9–

bodily injury is not a lesser-included offense of aggravated assault by threat . . . ."). And if an appellant's argument on appeal regarding a defensive issue or a lesser-included offense does not comport with his objection or request at trial, his complaint is not preserved for review. *See Penry v. State*, 903 S.W.2d 715, 753 (Tex. Crim. App. 1995); *Alcoser v. State*, 256 S.W.3d 398, 400 (Tex. App.—San Antonio 2008, no pet.). As a result, appellant's argument was not preserved for appellate review.

Furthermore, even if we assume the issue was preserved for our review, the evidence in this case did not raise the lesser-included offense. Appellant argues that because Padilla gave two different versions of where the events occurred, a jury could have believed that the part of Padilla's testimony that appellant held a gun to her head or used a gun was either an assumption or an embellishment. This argument, however, overlooks the standard of review we must apply. The question we must answer is whether there is some evidence in this record that would permit a rational trier of fact to find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *See Rice*, 333 S.W.3d at 145. Additionally,

> While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense. Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.

*Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

The evidence at trial showed that the attacker broke down Padilla's door and fell into her apartment. Padilla testified that she saw a gun in the man's hand when he entered the apartment. Padilla jumped over his legs to get out of her apartment. He caught up to her at the bottom of the stairs, putting his arm around her neck and placing a gun to her head. Padilla testified that she could feel the gun and then saw it. She thought the man was going to kill her.

Padilla testified that the gun was placed to her head during the offense. Other evidence

−10−

also showed that appellant had a gun during the incident at the Venue at Greenville apartments. There is no evidence appellant assaulted Padilla but did not use or exhibit a firearm, nor does appellant direct us to evidence "directly germane" to a simple assault. Because we find no affirmative evidence in the record that appellant was guilty of only simple assault, even if we assume appellant's issue was preserved, the trial court properly denied appellant's request for a lesser-included offense instruction. We overrule appellant's first issue.

### 2. Unlawful Possession of a Firearm by a Felon

In his second issue, appellant contends the trial court erred by overruling appellant's objection to an Arkansas judgment and commitment order, State's exhibits 59 and 59-A, in the unlawful possession of a firearm case. Appellant asserted that the judgment and commitment order did not meet the definition of a "judgment" as contained in article 42.01 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1.

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). A trial court abuses its discretion when it acts outside the zone of reasonable disagreement. *Id.*

The indictment in cause number 05–14–00382–CR charged appellant with unlawful possession of a firearm by a felon. To establish unlawful possession of a firearm by a felon as alleged in the indictment, the State was required to show appellant was previously convicted of a felony offense and that he possessed a firearm at a location other than the premises at which he lived. TEX. PENAL CODE ANN. § 46.04(a)(2). An out-of-state conviction can be used to show that a defendant has been previously convicted of a felony. *See id.* § 46.04(f). An offense under the laws of another state is a felony if, at the time it is committed, the offense (1) is designated by a law of this state as a felony; (2) contains all the elements of an offense designated by a law of this state as a felony; or (3) is punishable by confinement for one year or more in a penitentiary.

-11-

*Id.* § 46.04(f)(1)–(3).

To show that a defendant has been convicted of a prior offense, the State must prove: (1) that a prior conviction exists; and (2) that the defendant is linked to the conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.* Instead, each case must be judged on its own merits. *Id.* at 921 n. 8.

> While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted.

*Id.* at 921–22 (footnotes omitted).

The indictment in the unlawful possession of a firearm case alleged that appellant had been convicted of the felony offense of burglary in the Circuit Court, Sixth District, Seventh Division, of Pulaski County, Arkansas, in docket number CR 2006 001882, on August 4, 2006. At trial, to establish the prior felony conviction, the State offered a certified judgment and commitment order from the Circuit Court of Pulaski, Arkansas as State's exhibit 59, and a redacted version of that document as State's exhibit 59-A. Defense counsel objected to the judgment, arguing it failed to meet the requirements of article 42.01 of the Texas Code of Criminal Procedure. His objection was as follows:

> Specifically, the purported judgment that is marked as State's Exhibit No. 59 does not state whether or not the case was tried before a jury or whether a jury was waived. That's at 42.01, Section 4.
>
> The purported judgment doesn't distinguish between date of judgment entry or imposition or the date the sentence is to commence. It doesn't set forth under Section 20 of 42.01 the terms of the plea bargain, and it doesn't provide a thumbprint as required by Section 23 of 42.01.

So those are my objections based upon the judgment itself as far as whether or not it meets the definition of a judgment in the Texas Code of Criminal Procedure.

My second objection is that the judgment does not specify whether or not the proper admonitions were given; specifically, whether or not the plea was freely and voluntarily made, whether or not the defendant was admonished concerning his state and Constitutional rights with regard to the required admonishments prior to the entry of the plea.

The State responded that article 42.01 is "not the standard for proving a prior" and that appellant's fingerprints were found in State's exhibit 57, which was a certified ten-print fingerprint card from the State of Arkansas that contained appellant's identifying information and referred to the residential burglary charge. The State offered a redacted version of the fingerprint card that omitted reference to other offenses as State's exhibit 57-A. It also offered an Arkansas penitentiary packet (State's exhibit 58) that included the conviction for residential burglary with the same offense date, date of birth, state I.D. number, social security number, and docket number, as well as a redacted version of that document (State's exhibit 58-A). The trial court concluded that the redacted copies of the documents were admissible during the guilt-innocence phase of the trial and overruled the defense's objections.

During the testimony of Dallas County Sheriff's Deputy Margaret Brown Lewis, the State offered a fingerprint card collected by Deputy Lewis. She compared the fingerprint card to the fingerprints in State's exhibit 57, the Arkansas fingerprint card, and testified that the individuals in the two exhibits were "one and the same." The State offered State's exhibits 57, 57-A, 58, 58-A, 59, and 59-A. The trial court again overruled the defense's objections, admitted the original exhibits for record purposes, admitted the redacted exhibits for all purposes, and allowed the State to publish the redacted exhibits to the jury.

Article 42.01 defines a judgment as "the written declaration of the court signed by the judge and entered of record showing the conviction or acquittal of the defendant," and requires a judgment of conviction to reflect, among other things, whether the case was tried before a jury or

-13-

that a jury was waived, the date the sentence is imposed, the terms of any plea bargain, and the defendant's thumbprint. TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1(4), (17), (20), and (23). However, the "[f]ailure to adhere to the requirements of article 42.01 does not render a conviction void, but merely voidable. Such failures are subject to reformation on direct appeal but are not subject to collateral attack." *Porter v. State*, 757 S.W.2d 889, 891 (Tex. App.—Beaumont 1988, no pet.); *see also Gaston v. State*, 63 S.W.3d 893, 897–98 (Tex. App.—Dallas 2001, no pet.); *Sparkman v. State*, 55 S.W.3d 625, 629 (Tex. App.—Tyler 2000, no pet.); *Alvarez v. State*, No. 08–11–00063–CR, 2013 WL 2285862, at *15 n. 8 (Tex. App.—El Paso May 22, 2013, pet. ref'd) (not designated for publication).

In this case, the Arkansas judgment and commitment order, along with the ten-print card and the Arkansas penitentiary packet, established the existence of the prior felony conviction. The State properly linked appellant to that conviction. *See Flowers*, 220 S.W.3d at 921–22. Deputy Lewis testified that the fingerprints in the fingerprint card she collected from appellant belonged to the same person as the fingerprints in State's exhibit 57. The Arkansas judgment stated that the residential burglary offense was a felony and that appellant was sentenced to seventy-two months imprisonment. *See* TEX. PENAL CODE ANN. § 46.04(f). Therefore, the trial court did not abuse its discretion by admitting the Arkansas judgment and commitment order. *See Davis*, 329 S.W.3d at 803. We overrule appellant's second issue.

### 3. Modification of Judgment

In cause number 05–14–00383–CR, appellant pleaded true to both of the indictment's enhancement paragraphs that alleged prior felony burglary and robbery offenses from the State of Arkansas. The trial court accepted appellant's pleas of true to the enhancement paragraphs. The court's judgment, however, states "N/A" in the space provided for the plea to the first enhancement paragraph and the findings on the first enhancement paragraph. Because the

necessary information is available in the record, on our own motion we modify the trial court's judgment in 05–14–00383–CR to show that appellant pleaded true to the first enhancement paragraph and that the trial court found the enhancement paragraph to be true. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (providing that an appellate court has the authority to modify incorrect judgments sua sponte when the necessary information is available to do so); *see also Tyler v. State*, 137 S.W.3d 261, 267–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (authority to modify judgment is not dependent upon a party's request).

As modified, we affirm the trial court's judgments.

/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140382F.U05

—15—



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

VINCENT RAY SETTLES, Appellant

No. 05-14-00382-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F14-00085-J.
Opinion delivered by Justice Myers. Justices Evans and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of June, 2015.



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

VINCENT RAY SETTLES, Appellant

No. 05-14-00383-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F14-00086-J.
Opinion delivered by Justice Myers. Justices Evans and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Plea to 1st Enhancement Paragraph: True" and "Findings on 1st Enhancement Paragraph: True."

As **MODIFIED**, the judgment is **AFFIRMED**. We direct the trial court to enter a new judgment that reflects this modification.

Judgment entered this 3rd day of June, 2015.

Vincent Settles #1939000
Coffield Unit
2661 F.M. 2054
Tennessee Colony, Texas 75884

AUG 27 2015

RETURNED FOR ADDITIONAL POSTAGE

RETURNED FOR ADDITIONAL POSTAGE

added 8.28=15

...ta, Clerk
...minal Appeal
...t Building
...08
...exas 78711